UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

LAWRENCE KENNEY,                        :
                                        :
          Plaintiff,                    :
                                        :
     v.                                 :   Docket No. 2:07-cv-206
                                        :
AMT CAPITAL PARTNERS, LLC; PYXIS        :
SECURITIES, LLC; LIONHART (CANADA),     :
LTD; LIONHART (USA), LLC; SUPPORT       :
RESOURCES HOLDINGS, INC.; TERRY         :
DUFFY; SRH CAPITAL, INC.; PAUL          :
GAGNON; KENNETH MICHAEL HARRIS;         :
NICHOLAS REGO; JEFFREY AHBE; JOHN       :
DRICS; GAILE GONG; DAVID PETERSON;      :
PAUL ABRAHAMSEN; and STEVEN             :
WASSERMAN,                              :
                                        :
          Defendants.                   :

**OPINION and ORDER**

In this lawsuit alleging fraud, breach of fiduciary duty,

tortious interference with contractual relations, and

interception of wire, electronic and oral communications, all

Defendants have moved to dismiss Plaintiff Lawrence Kenney's

First Amended Complaint on various grounds, including lack of

personal jurisdiction, failure to state a claim upon which relief

can be granted, and failure to plead fraud with particularity.

Several Defendants have moved in the alternative for a stay of

the case pending resolution of Kenney's state court action to

compel arbitration, or for dismissal or transfer of this case to

the United States District Court for the District of Arizona

pursuant to 28 U.S.C. §1404.  Kenney has moved to amend his

amended complaint, which all Defendants have opposed as futile.[1]

## I.   Background

The following allegations, taken from Kenney's First Amended Complaint and his affidavit in support of personal jurisdiction, are accepted as true for the purpose of resolving the motions to dismiss.

In July 2001 Kenney formed Prism Support Holdings, LLC ("Prism Support"), a company in the business of maintenance, repair and service for capital equipment in the semiconductor manufacturing business.  Prism Support was headquartered in Vermont, originally doing business from an office in Shelburne, Vermont, and later operating out of Kenney's home.

In late 2001 Kenney solicited financing from Defendant Lionhart (Canada) Ltd. ("Lionhart Canada") to expand Prism Support.  Defendant Terry Duffy is Lionhart Canada's CEO. Lionhart (Canada)'s Titan Orion Fund invested $125,000.00 in Prism Support in November 2001 by wiring the money to a bank in Burlington, Vermont.  In exchange the Fund received a one percent interest in the company.  The investment was confirmed by an exchange of faxes between Vermont and Lionhart (Canada)'s office in Toronto, Ontario.

---

[1]  Defendants do not oppose amendment of the complaint to correct names of some of the entities he has sued.  The Court refers to these entities as revised by the proposed Second Amended Complaint.

Defendant Paul Abrahamsen invested $125,000.00 in Prism Support in December 2001 and received a one percent interest in the company.  At that time Abrahamsen was a member of Pyxis Associates, LLC, the owner of a securities broker-dealer located in Rumson, New Jersey called Pyxis Securities, LLC ("Pyxis"), and manager of the North American operations of Lionhart (USA) LLC ("Lionhart USA"), an investment advisor with a principal place of business in New York, New York.

Between 2002 and 2004 Kenney worked with Defendant Gaile Gong on due diligence for prospective acquisitions by Prism Support.  Gong was employed by an Illinois company that was wholly owned by Lionhart (USA).  Kenney's work with Gong involved exchanges of telephone calls, emails and faxes to and from Vermont.

In 2003 Kenney came in contact with Defendant John Drics, an Indiana attorney representing Duffy and Lionhart (Canada), in connection with Prism Support's attempted acquisition of a Dutch company.  Drics and Kenney exchanged telephone calls, emails and faxes to and from Vermont in connection with this and other prospective acquisitions.

In the fourth quarter of 2003 Kenney looked into acquiring FAB Services Division of ATMI, Inc.  Duffy agreed that he and Lionhart (Canada) would back the acquisition.  Gong and Kenney conducted due diligence.  Duffy and Drics insisted that the

3

acquiring company be a Delaware C corporation, and persuaded Kenney to merge Prism Support into a new entity, Support Resources Holdings, Inc. ("Support Resources"). Drics' firm handled the merger of Prism Support into Support Holdings, and the incorporation of SRH Capital, Inc. ("SRH Capital"), which was created to fund this new entity.

Kenney was the president, CEO and largest stockholder of Support Resources, which also was headquartered in Vermont. In July 2004, Duffy directed that Abrahamsen be added to the board of Support Resources and the management committee of Prism Support. In August 2004, Duffy requested that Defendant Nicholas Rego be added to the board of Support Resources. Since March 2005 Rego has been acting CFO of the company on a part-time basis. Rego's principal occupation is as a member of Pyxis. Duffy also directed that Gong and Defendant Jeffrey Ahbe be added to the board of Support Resources.

In August 2004 Abrahamsen, Rego and Kenney met at the Vermont home of another investor to review the details of the operations of Support Resources. They adjourned the meeting to reconvene at the Support Resources office where Kenney provided detailed financial information about the company. Rego took responsibility for the bank accounts and tax filings for the company.

After the acquisition of FAB Services Division of ATMI,

4

Inc., Support Resources took on fifty-five employees from ATMI, including Defendant David Peterson and Defendant Paul Gagnon. Peterson became the finance director and Gagnon became the sales director of Support Resources. Peterson and Gagnon reported to Kenney in Vermont, although they both worked in Arizona. Peterson set up Prism Support's payroll and worked with Rego to file its Vermont corporate tax information.

Support Resources operated for approximately one year under "mezzanine financing" provided by Lionhart (Canada) while a Master Financing Agreement was being generated. Several sets of loan documents were generated during this period, each needing Kenney's review and signature, and each transmitted to Kenney in his Vermont office. Kenney was in frequent contact with Drics, Abrahamsen, Gong, Ahbe and Duffy concerning the finance agreements, through exchanges of telephone calls, faxes and emails. Funds were transferred from Lionhart (Canada) to Support Resources accounts in Vermont and Arizona.

In 2005 Duffy and Ahbe informed Kenney that Lionhart (Canada) wished to be bought out of its interest in Support Resources. They asked Kenney to seek new investors. Kenney interviewed the principals of Defendant AMT Capital Partners, LLC ("AMT Capital"), Defendants Kenneth Michael Harris and Defendant Steven Wasserman. Kenney spoke with both regularly from Vermont, and received faxes and emails at the Support Resources office in

his home.

In February 2007, Defendants Ahbe, Rego, Gong, Abrahamsen, Duffy, Gong and Drics removed Kenney and installed Harris as president and CEO of Support Resources, and moved its headquarters to Arizona.

Kenney commenced suit against Defendants in the District of Vermont by filing a bare-bones complaint on September 28, 2007, alleging fraud, tortious interference with contractual relations and illegal interception of wire, electronic or oral communications.  On October 18, 2007 Kenney commenced an action in the Superior Court of Chittenden County, Vermont to compel Support Resources to proceed with arbitration under the Vermont Arbitration Act, pursuant to the terms of an Employment Agreement.  He moved for dismissal of this action on March 28, 2008.[2]

Defendant Support Resources filed suit against Kenney in the District of Arizona on December 11, 2007 for breach of fiduciary duty, unjust enrichment and conversion, and sought an accounting. On December 14, 2007 Kenney filed his First Amended Complaint in this action, which added a count for breach of fiduciary duty and provided more details concerning his claims.

---

[2]  This case having been closed, the motions to stay pending resolution of the arbitration proceeding will be denied as moot.

## II.  Personal Jurisdiction

Thirteen defendants have moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction: Pyxis, Lionhart (USA), Lionhart (Canada), Duffy, Drics, Rego, Abrahamsen, Ahbe, Gong, Gagnon, Peterson, Harris and Wasserman.

In resolving the issue of personal jurisdiction in a diversity action, a court must first determine whether the plaintiff has shown that a defendant is amenable to service of process under the forum state's laws, and then it must assess whether assertion of jurisdiction comports with due process. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  Because Vermont's long-arm statute, Vt. Stat. Ann. tit. 12, § 913(b) (2002), "confers jurisdiction over non-resident defendants to the full extent permitted by the Due Process Clause," *Dall v. Kaylor*, 658 A.2d 78, 79 (Vt. 1995), the only inquiry here is whether due process permits the Court to exercise personal jurisdiction over the defendants.

Due process requires that a defendant have "sufficient minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The due process test has two parts: the minimum contacts inquiry and the reasonableness inquiry.  *Metro. Life*, 84 F.3d at 567.

7

Jurisdiction over a defendant may be either general or specific.  General jurisdiction is based on a defendant's general business contacts with the forum state, and allows a court to hear a case whose subject matter is unrelated to those general business contacts.  *Id.* at 568.  Kenney does not appear to argue that this Court has general jurisdiction over the Defendants that have challenged jurisdiction.[3]

Specific jurisdiction may exist when a defendant has "purposefully directed his activities at [a] resident[] of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (citations omitted). Thus, "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). Although the "unilateral activity" of a plaintiff or third party, or "random," "fortuitous" or "attenuated" contacts of a defendant will not support jurisdiction, "[j]urisdiction is proper . . . where the contacts proximately result from actions by the

---

[3]  Kenney's stray comment dismissing Defendants' argument that their contacts with the forum would not support general jurisdiction as failing the "straight face test," Pl.'s Opp'n 4 (Doc. 52), in context appears to be supporting the exercise of specific jurisdiction.

defendant *himself* that create a 'substantial connection' with the forum State." *Id.* at 475.

A corporation can only make contacts through its agents and employees, *see Int'l Shoe*, 326 U.S. at 316, and "[e]ach defendant's contacts with the forum state must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). Physical presence within a forum State is not required; commercial business transacted solely by electronic and wire communication, if purposefully directed at a forum resident, will support jurisdiction. *Burger King*, 471 U.S. at 476.

If the requisite minimum contacts are established, a court will go on to consider "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe*, 326 U.S. at 320). Factors to be considered are: "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Id.* at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

A plaintiff bears the burden of showing that the forum court has jurisdiction. *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018,

1025 (2d Cir. 1997).  Prior to discovery, a plaintiff need only make a prima facie showing of personal jurisdiction over a defendant, however.  *See Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008); *accord Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (although a plaintiff must eventually establish jurisdiction by a preponderance of the evidence, "until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion.").  Once a plaintiff establishes minimum contacts, a defendant bears the burden of showing that the exercise of jurisdiction would be unreasonable. *See Burger King*, 471 U.S. at 477.

**Pyxis**.  Kenney has alleged that the Lionhart defendants used Pyxis to transfer funds from Lionhart (Canada) to Support Resources accounts in Vermont.  He has also alleged that Abrahamsen was a former Pyxis employee and Rego is a current Pyxis employee.  These allegations do not add up to a prima facie showing of Pyxis's purposeful availment of the forum, and its motion to dismiss for lack of personal jurisdiction is **granted.**

**Lionhart (USA)**.  Kenney has alleged that he met Defendants Rego, Duffy, Gong, Abrahamsen and Drics for a business meeting in New York, New York following a Lionhart (USA) holiday party, and that Abrahamsen is a Lionhart (USA) employee.  These allegations likewise do not amount to a prima facie showing of Lionhart

10

(USA)'s purposeful availment of the forum, and its motion to dismiss for lack of personal jurisdiction is **granted.**

**Drics.**  Attorney Drics contends that his involvement was limited to advising his client SRH Capital, and that he is not subject to personal jurisdiction based on his contacts with the forum on behalf of his client, citing *Schwartz v. Frankenhoff*, 733 A.2d 74 (Vt. 1999), among other cases.  In *Schwartz*, a law firm was sued by a nonclient for actions undertaken ostensibly on behalf of the client.  *Id.* at 82.  Under these circumstances, contact with forum residents on behalf of the client did not amount to a prima facie showing of personal jurisdiction over the lawyers.  *Id.* at 82-83.

Kenney's amended complaint and affidavit assert that Drics acted on behalf of the Lionhart Defendants, handled the merger of Prism Support into Support Resources, acted regularly on behalf of Support Resources, actively assisted its takeover by the Lionhart Defendants, and exchanged numerous telephone calls, faxes and e-mails with Kenney in Vermont in connection with this activity.  Crediting Kenney's assertions at this stage of the litigation, all of Drics' contacts with the forum have been connected with representing one or more of the Defendants. Kenney has not made a prima facie showing of minimum contacts to assert jurisdiction over Drics as an independent tortfeasor.  *See id.* at 82 (letters and telephone calls to Vermont residents on

11

behalf of a client will not support jurisdiction over a law firm). Drics' motion to dismiss for lack of personal jurisdiction is **granted**.

**Lionhart (Canada)**. Kenney has alleged that Lionhart (Canada) acting through its employees or agents Abrahamsen, Duffy, Drics and Gong, was actively involved in 2002 and 2003 with pursuing potential acquisitions for Prism Support, and in connection with this activity conducted extensive communication with Kenney in Vermont. In 2004 Lionhart (Canada) was responsible for drafting and transmitting to Support Resources in Vermont several sets of loan documents, which also required extensive communication with Kenney in Vermont. Kenney has adequately alleged a prima facie showing of minimum contacts.

**Duffy, Rego, Abrahamsen, Ahbe, Gong**. Kenney has alleged extensive purposeful contacts between each of these defendants and Kenney and Support Resources or its predecessor Prism Support in Vermont over the period of time giving rise to his alleged injuries. Rego, Abrahamsen, Ahbe and Gong were placed on Support Resources' board, allegedly to facilitate a takeover of the company. Duffy allegedly required the formation of Support Resources and ordered that these individuals be placed on the board. The allegations against these defendants suffice to satisfy Kenney's prima facie burden.

**Gagnon and Peterson.**  Gagnon was sales director of Support Resources from 2005 to 2007.  During most of this period Support Resources was headquartered in Vermont, Gagnon reported directly to Kenney in Vermont and he dealt with Vermont clients.  Peterson became finance director of Support Resources in 2004, and reported directly to Kenney in Vermont.  Kenney has alleged that these defendants participated in weekly meetings concerning the operation of the company.  He has made an adequate showing of minimum contacts for these defendants.

**Harris and Wasserman.**  Kenney has alleged that Harris and Wasserman, in connection with AMT Capital's investment in Support Resources, exchanged numerous telephone calls, emails and facsimile transmissions in 2005 and 2006 with Kenney in Vermont in his capacity as head of Support Resources.  He has made an adequate showing of minimum contacts for these defendants.

Following discovery it may well be that Kenney will be unable to muster sufficient evidentiary support for his jurisdictional allegations, but at this early stage of the litigation he has sustained his burden of making a prima facie showing of minimum contacts.  The Defendants have not demonstrated that the exercise of jurisdiction over them would be unreasonable as failing to comport with "fair play and substantial justice."  Accordingly the motions to dismiss for lack of personal jurisdiction on behalf of Lionhart (Canada),

Duffy, Rego, Abrahamsen, Ahbe, Gong, Gagnon, Peterson, Harris and Wasserman are **denied.**

### III. 12(b)(6) Standard

All Defendants have moved to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Under the "flexible 'plausibility standard'" for pleading a claim announced by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964-65 (2007), a plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis omitted); *see also ATSI Commc'ns, Inc. v. Shaar Fund,* Ltd., 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl.*, 127 S. Ct. at 1965); *accord* Goldstein *v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which its rests,'" however. *Bell Atl.*, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

14

A court accepts the factual allegations of the complaint as true, drawing all reasonable inferences in the plaintiff's favor.  *See ATSI Commc'ns*, 493 F.3d at 98.

## IV.  Fraud

Under Vermont law the elements of an action for fraud or deceit are "'an intentional misrepresentation of existing fact, affecting the essence of the transaction, so long as the misrepresentation was false when made and known to be false by the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to his damage.'"  *Silva v. Stevens*, 589 A.2d 852, 857 (Vt. 1991) (quoting *Union Bank v. Jones*, 411 A.2d 1338, 1342 (Vt. 1980)).  "[F]raudulent nondisclosure or concealment 'involves concealment of facts by one with knowledge . . . and a duty to disclose, coupled with an intention to mislead or defraud.'" *Monahan v. GMAC Mortgage Corp.*, 893 A.2d 298, 320 (Vt. 2005) (quoting *Silva*, 589 A.2d at 857).

Rule 9(b) of the Federal Rules of Civil Procedure governs the pleading of a fraud claim in federal court, and requires that the circumstances constituting fraud be stated with particularity.  "This standard imposes an obligation on [a] plaintiff to 'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the

statements were made, and identify those responsible for the statements.'" *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001) (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)).  Conclusory allegations that defendants' conduct was fraudulent will not satisfy Rule 9(b). *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir. 1995).

The First Amended Complaint alleges a plan to defraud Kenney of part of his ownership interest in Support Resources and to deprive him of monies and benefits due him.  As part of this scheme the Lionhart Defendants (Duffy, Drics, Ahbe, Rego, Abrahamsen and Gong, acting on behalf of Lionhart (Canada), Lionhart (USA), Pyxis and SRH Capital) made it appear that they would finance the purchase of the AMTI Fab Services Division, Inc. according to a term sheet.  Through a series of interim financing agreements they injected capital into Support Resources until their economic leverage enabled them to dominate the company, at which point they forced Kenney to accept terms of a Master Financing Agreement that were more onerous than the original terms, and Kenney's interest in the company was reduced to 24% from 88%.

The First Amended Complaint also alleges a second plan to defraud Kenney of his interest in Support Resources on the part of the AMT Capital Defendants (Harris and Wasserman, acting on behalf of AMT Capital).  Kenney alleges that the AMT Capital

16

Defendants falsely represented that AMT Capital was engaged in the business of investment banking and had offices in New York, San Francisco, Chicago and Toronto, and that it did not have the licenses required to engage in investment banking.

The First Amended Complaint alleges that as part of the original scheme to defraud, the two groups of defendants removed Kenney as chief executive officer and president of Support Resources.  In support of the scheme to defraud Kenney, Harris, the new president and CEO, sent notices of board meetings to all Support Resources directors except Kenney, conducted Support Resources business and passed corporate resolutions.  Without corporate authority the defendants also abrogated Kenney's rights as an officer and a shareholder, and took over Support Resources. Certain defendants intercepted Kenney's electronic communications, and filed a defamatory action against him in federal court in Arizona.

In the more than thirty paragraphs detailing two inter-related "scheme[s] and artifice[s] to defraud" Kenney sets out the following statements that he claims were false or misleading: 1) AMT Capital engaged in the business of investment banking with offices in New York, San Francisco, Chicago and Toronto; 2) three Defendants caused the Arizona complaint to be filed containing knowingly false factual allegations concerning Kenney's misconduct; 3) eight Defendants made false statements about

Kenney's employment agreement; 4) an agent of the Defendants falsely represented that he was authorized to act on behalf of Support Resources; 5) five Defendants knowingly and intentionally misled an accounting firm by failing to tell it of the Employment Agreement, and falsely represented that Support Resources was a wholly-owned subsidiary of Support Capital, Inc.  First Am. Compl. ¶¶ 37, 46, 51, 52, 59.

In order for a misrepresentation to support a claim of fraud, it must affect "the essence of the transaction," which the Court takes to be the deprivation of Kenney's ownership interest in Support Resources and the benefits associated with that position.  The First Amended Complaint fails to allege or suggest that AMT Capital's misrepresentation of its business, assuming its falsity, contributed to stripping Kenney of his position at Support Resources.  In addition, it fails to allege or suggest that Kenney was unable to ascertain the truth or falsity of the statement, or that he relied upon it to his damage.  The circumstances surrounding this misrepresentation have not been alleged with particularity.  Kenney has not specified in what respect the statement about AMT Capital's business was fraudulent, nor has he identified when and where the statement was made, nor who was responsible for making it.

With respect to the Arizona complaint with allegedly false allegations of misconduct, it is not apparent from the amended

18

complaint that these misrepresentations contributed to Kenney's ouster from his position or the loss of associated benefits; moreover, the truth is known to Kenney and he has not alleged or suggested that he relied upon the misrepresentations.  In addition, Kenney has not specified the statements in the complaint that are false or misleading, as required by Rule 9(b).

Concerning the false statements about Kenney's employment agreement, the amended complaint fails to allege or suggest that the truth about the Employment Agreement was not open to Kenney's knowledge or that he relied upon the false statements to his detriment.  Moreover, the amended complaint fails to specify the false statements, or to state when and where the statements were made, as required by Rule 9(b).

With respect to the agent's false statement concerning his authority to act on behalf of Support Resources, and the claim that five defendants misled the accounting firm, the amended complaint fails to connect this conduct with any deprivation of position, benefits or ownership interest, or to suggest reliance. The complaint also fails to specify when and where the statements were made.

Each of these allegations of misrepresentation or omission runs afoul of one or more requirements for an adequate claim of fraud under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Absent a pleading of misrepresentation or omission that makes out

a claim of fraud under Vermont law and is sufficiently specific
to satisfy Rule 9(b), Kenney's detailed account of the takeover
of his business does not amount to a viable claim of fraud.
Accordingly, the Defendants' motions to dismiss the fraud claim
are **granted**.

Kenney's opposition to the motions to dismiss requested
leave to amend should dismissal be granted, and leave to amend is
hereby **granted**.  Kenney may file an amended complaint within
thirty days of the filing of this decision.  *See Official
Publ'ns, Inc. v. Kable News Co.*, 884 F.2d 664, 669 (2d Cir.
1989).

**V.   Breach of Fiduciary Duty**

Kenney has alleged that as a stockholder and an officer of
Support Resources, all Defendants owed him a fiduciary duty.
First Am. Compl. ¶ 60.  All Defendants have moved to dismiss this
claim pursuant to Fed. R. Civ. P. 12(b)(6).  Kenney has not
opposed its dismissal.  The First Amended Complaint does not
reveal any facts that could establish a fiduciary duty on the
part of any Defendant toward Kenney.  Although "[i]t is true that
shareholders in a closely held corporation owe one another a
fiduciary duty of good faith and loyalty," *P.F. Jurgs & Co. v.
O'Brien*, 629 A.2d 325, 331 (Vt. 1993), and a fiduciary
relationship may be born of transactions that create a
"relationship of dependence and trust," *McGee v. Vt. Fed. Bank,*

20

*FSB*, 726 A.2d 42, 44 (Vt. 1999) (entry order), Kenney has not made out a claim against any defendant that such a relationship existed.  The Defendants' motions to dismiss the breach of fiduciary duty count for failure to state a claim is **granted.**

## VI.  Tortious Interference with Contractual Relations

Kenney has alleged that the Defendants tortiously interfered with his employment contract with Support Resources.  All Defendants have moved to dismiss the count for failure to state a claim.  "[T]o be liable for interference with a contractual relationship, the defendant must have intentionally and improperly induced or caused [a third party] not to perform under its contract with the plaintiff."  *Williams v. Chittenden Trust Co.*, 484 A.2d 911, 913 (Vt. 1984).  "The right protected is the right to be secure in one's business relations."  *Kollar v. Martin*, 706 A.2d 945, 946 (Vt. 1997) (entry order).

Not every intentional interference with a contract is improper.  *Id.*  Improper action involves consideration of the actions and motives of the defendants, the relations of the parties, and their respective interests.  *Gifford v. Sun Data, Inc.*, 686 A.2d 472, 474 (Vt. 1996) (entry order) (citing Restatement (Second) of Torts § 767 (1979)).

As an initial matter, no claim of tortious interference with a contract has been made against Defendants AMT, Gagnon and Wasserman.  In addition, this count fails to state a claim

21

against Support Resources, because it is a party to the alleged contract.  As to the remaining defendants, the amended complaint adequately provides notice of a tortious interference with contract claim.  Specifically it alleges that some or all of these defendants planned to deprive Kenney of the benefit of his employment contract by making false statements concerning the employment contract, by setting up a new company with new officers without authorization of the Support Resources board, and by misleading an accounting firm.  First Am. Compl. ¶¶ 50, 51, 54, 59.  This meets Rule 8(a)(2)'s notice pleading requirements.  *See Bell Atl.*, 127 S. Ct. at 1964.

Accordingly, the Defendants' motions to dismiss the tortious interference count are **granted** with respect to AMT, Gagnon, Wasserman and Support Resources, **denied** with respect to Lionhart (Canada), Duffy, SRH Capital, Harris, Rego, Ahbe, Gong, Peterson and Abrahamsen, and **denied as moot** with respect to dismissed Defendants Pyxis, Lionhart (USA) and Drics.

**VII. Interception of Wire, Electronic and Oral Communications**

Count IV of the First Amended Complaint alleges that Defendants Harris, Gagnon and Peterson intercepted Kenney's wire, oral or electronic communications in violation of Chapter 119 of Title 18, United States Code.  18 U.S.C. § 2511 prohibits, with certain exceptions, the interception and disclosure of wire, oral, or electronic communications.  Section 2520 provides for a

22

private right of action against any person or entity that has
engaged in a violation of this chapter.  The defendants have
moved to dismiss this count for failure to state a claim.

Kenney seeks to amend his complaint to add more specifics
about this claim, which the defendants oppose as futile.  As
amended the count would allege that Gagnon, at the behest of
Harris and Peterson, used a device to change Kenney's e-mail
account intentionally to permit Gagnon to intercept, divert and
view his electronic communications.  The Defendants argue that
merely alleging the use of a device to intercept e-mails does not
violate the statute.  Section 2511(1)(a) prohibits "intentionally
intercept[ing], endeavor[ing] to intercept, or procur[ing] any
other person to intercept or endeavor to intercept, any wire,
oral, or electronic communication."  18 U.S.C. § 2511(1)(1).
"Intercept" is defined as "the aural or other acquisition of the
contents of any wire, electronic, or oral communication through
the use of any electronic, mechanical, or other device."  18
U.S.C. § 2510(4).

Thus, contrary to Defendants' contention, in order to state
a claim under this chapter, a plaintiff must allege that
communications were intentionally acquired through the use of a
device.  The interceptor, as well as anyone who has procured
another to intercept, may be liable under the statute.  Kenney's
allegations give the defendants "'fair notice of what the . . .

23

claim is and the grounds upon which it rests.'" *Bell Atl.*, 127
S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47
(1957)).  They sufficiently "raise his right to relief above the
speculative level." *Id.* at 1965.  Federal Rule of Civil
Procedure 8(a)(2) requires no more at this stage of the
litigation.

Harris, Peterson and Gagnon's motion to dismiss the illegal
interception of electronic communications count is **denied.**

## VIII. Motion to Amend

Kenney seeks to amend his complaint to correct the names of
the entities he has sued, add a count for breach of contract, add
details to his claim of illegal interception of electronic
communications, and to include additional conduct in his fraud
count.  The Defendants do not oppose the corrections.  They
oppose the remainder of the proposed amendment solely on the
ground of futility.  As discussed above, the proposed amendments
to the illegal interception count are not futile, and will be
allowed.  The additional conduct to be added to the fraud count
does not cure the defects in the pleading, and are not allowed at
this time.  Kenney has, however, thirty days to file an amended
complaint that addresses his defective fraud claim.  This
pleading may include all conduct that supports his claim of fraud
of which he has become aware since the filing of his First
Amended Complaint.

24

The Defendants oppose addition of a breach of contract count because, they argue, the employment contract is a sham, and if it is not a sham, the contract provided that any dispute or controversy arising under or in connection with the agreement be settled exclusively by arbitration.  That a contract contains an arbitration clause does not preclude a party to the contract from filing a complaint for breach of contract, although the count may ultimately be stayed or dismissed if arbitration is sought. Although there is a strong presumption in favor of arbitration, the right to arbitration may be waived.  A determination of waiver "necessarily depends upon the facts of the particular case and is not susceptible to bright line rules." *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993).  Both parties are aware of the right to compel arbitration contained in the agreement, Kenney having filed a state action that he later withdrew.  As there is no pending motion to compel arbitration, and any challenge to the actual existence of the contract requires the resolution of factual issues inappropriate for determination on a motion to dismiss for failure to state a claim, the proposed amendment to add a breach of contract count is allowed.

The motion to amend the complaint is therefore **granted in part and denied in part without prejudice**.  The amendments are granted, except for amendments to the fraud count, which are denied without prejudice.

25

**IX.  Motion to Transfer**

Several Defendants have moved to dismiss this action in favor of the District of Arizona litigation or to transfer this action to the District of Arizona, pursuant to 28 U.S.C. § 1404(a).  "As a general rule, '[w]here there are two competing lawsuits, the first suit should have priority.'" *Employers Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008) (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76,79 (2d Cir. 1989)).  The Second Circuit "ha[s] recognized only two exceptions to the first-filed rule: (1) where the balance of convenience favors the second-filed action, and (2) where special circumstances warrant giving priority to the second suit."  *Id.* at 275 (citations omitted).

The Defendants argue that both exceptions apply here.  As an initial matter, the Court notes that it is a stretch to term these lawsuits "competing," where they have only two parties in common--Kenney and Support Resources--and one event in common-- the termination of Kenney's position with Support Resources. Nevertheless, assuming these are competing lawsuits, Defendants have not shown that either exception warrants dismissal or transfer.

"[T]he 'factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. §

1404(a)' . . . [including] (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance on unwilling witnesses, [and] (7) the relative means of the parties." *Id.* (quoting *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.* 178 F. Supp. 2d 459, 465 (S.D.N.Y. 2002)).

The balance of convenience factors weigh inconclusively, or slightly in favor of Kenney's choice of forum, in which case the presumption in favor of the forum of the first-filed suit counsels retaining this case in the District of Vermont.  The plaintiff's choice of forum, the locus of operative facts and the relative means of the parties favor the District of Vermont.  The First Amended Complaint covers events that for the most part occurred while Support Resources and Kenney were based in Vermont.  Kenney has repeatedly asserted that his means are far inferior to those of the Defendants.  The convenience of witnesses and parties, location of and access to documents and other sources of proof, and the availability of process favors neither side, with some witnesses, parties and evidence located in Vermont, some in Arizona and some elsewhere.

The Defendants argue three "special circumstances" dictate departure from the first-filed rule: one, that Kenney's lawsuit

27

is an anticipatory action; two, that it was filed in bad faith; and three, that Kenney engaged in improper forum shopping. Technically, Kenney's lawsuit was not an anticipatory action--"an action filed in response to a specific, direct threat of litigation." *Id.* at 276. As far as the Court is aware, no Defendants threatened litigation prior to Kenney's filing. Moreover, the scope of Kenney's claim is much broader than the scope of Support Resource's lawsuit in Arizona.

The Defendants' evidence of bad faith consists merely of their claim that the original complaint was so deficient as to render it unworthy of priority. Bad faith connotes more than negligence or bad judgment; it suggests deliberate wrongdoing. *See, e.g., United States v. Schneider*, 395 F.3d 78, 86 & n.3 (2d Cir. 2005); *see also Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999) ("Bad faith requires a showing of fraudulent, deceitful, or dishonest action."). Although the original pleading was undeniably deficient, the Defendants have not shown that it was filed in bad faith.

"'[W]here forum shopping *alone* motivated the choice of the situs for the first suit,'" a court may disregard the first-filed rule. *Employers Ins. of Wausau*, 522 F.3d at 276 (quoting *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969). That Kenney's attorney may have recognized advantage to his client in filing in Vermont does not mean that he engaged in

28

*improper* forum shopping, which requires "some manipulative or deceptive behavior," or tenuous or de minimis ties between the litigation and the forum. *Id.* Kenney's lawsuit has substantial ties to the forum, and the Defendants have not shown manipulative or deceptive behavior on Kenney's part.

Accordingly, the motions to dismiss or transfer are **denied**.

## X. Conclusion

For the reasons stated above, the Motion to Dismiss Defendants Rego, Ahbe, Harris, Peterson and Gagnon (Doc. 17) is **granted in part and denied in part and denied in part as moot.** The Motion to Dismiss Defendant John Drics, Esq. (Doc. 18) is **granted.** Defendant Support Resources Holdings, Inc.'s Motion to Stay, Dismiss, or Transfer (Docs. 26 & 49) is **granted in part, denied in part and denied in part as moot.** The Motion to Dismiss Defendant Paul Abrahamsen (Doc. 28) is **granted in part, denied in part and denied in part as moot.** The Motion to Dismiss Defendant Gaile Gong (Doc. 37) is **granted in part, denied in part and denied in part as moot.** The Motion to Dismiss Defendant Steven Wasserman (Doc. 39) is **granted.** The Motion to Dismiss Defendants SRH Capital, Inc. and AMT Capital Partners, LLC (Doc. 42) is **granted as to AMT; granted in part, denied in part and denied in part as moot as to SRH Capital.** The Motion to Dismiss Defendants Pyxis Securities LLC, Lionhart (Canada), Ltd., and Lionhart

(U.S.A.) LLC (Doc. 44) is **granted as to Pyxis and Lionhart (USA);
granted in part, denied in part and denied in part as moot as to
Lionhart (Canada).**  The Motion to Dismiss Defendant Terry Duffy
(Doc. 74) is **granted in part, denied in part and denied in part
as moot.**  Count I (fraud) is dismissed with leave to amend.
Count II (breach of fiduciary duty) is dismissed.  Defendants
AMT, Pyxis, Lionhart (USA), Drics and Wasserman are dismissed.

Plaintiff's Motion to Amend His Complaint (Doc. 40) is
**granted in part and denied in part without prejudice.**

Dated at Burlington, in the District of Vermont, this 12th
day of September, 2008.


/s/ William K. Sessions III
William K. Sessions III, Chief Judge
United States District Court